# CARMAX

# USED VEHICLE BUYER'S ORDER

3223 US HIGHWAY 98 N
LAKELAND, FL 33805

In this Used Vehicle Buyer's Order ("Contract"), the words "you" and "your" means anyone signing this Contract as a Buyer or Co-Buyer. The words "CarMax," "we," "us," and "our" means the Seller, CarMax Auto Superstores, Inc.

Buyer  OSVALDO NAVARRO
Name

802 PINE CONE DR                DAVENPORT, FL 33897-4669
Address                         Zip Code

Co-Buyer  ELIZABETH MARIA GALLENO
Name

802 PINE CONE DR                DAVENPORT, FL 33897
Address                         Zip Code

You are purchasing this used vehicle (the "Vehicle"):

Year: 2023      Make: GMC
Model: ACADIA      Body Style: 4D SPORT UTILITY
Stock No.: 25447401      Mileage: 12,474
VIN: 1GKKNML47PZ228670

Liability insurance is not included. You attest that you currently maintain or have arranged for at least the minimum motor vehicle liability insurance required by state law with this insurance company:

Insurance Co. STATE FARM GENERAL INSURANCE COMPAN
Policy No. 4079664C275914      Eff. Date 11/10/2023
Agent Name MATTHEW C WES   Phone  (305) 552-7003
Address  14653 SW 42ST
City/State/Zip  MIAMI, FL 33175

A Trade-In Credit is being credited for the following vehicles ("Trade-In"):

Year: 2011      Make: LINCOLN
Model: MKZ      Body Style: 4D SEDAN
VIN: 3LNHL2GC3BR771069      Mileage: 54,462

Year: N/A      Make: N/A
Model: N/A      Body Style: N/A
VIN: N/A      Mileage: N/A

Limited Warranty: The Vehicle is covered by CarMax's Limited Warranty for 90 days or 4,000 miles, whichever comes first. The Limited Warranty is part of this Contract. Please read the Limited Warranty for important details.

Limitation of Warranties: CARMAX MAKES NO EXPRESS WARRANTIES OTHER THAN THE LIMITED WARRANTY. TO THE EXTENT PERMITTED BY LAW, ANY AND ALL IMPLIED WARRANTIES, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS, APPLICABLE TO THE VEHICLE AND PRODUCTS SOLD HEREUNDER ARE LIMITED TO THE DURATION OF THE LIMITED WARRANTY. To the extent permitted by law, CarMax shall not be liable for any damages relating to the loss of use of the Vehicle or products, loss of time, inconvenience or commercial loss, or any other incidental or consequential damages. Any and all warranties are extended only to the original purchaser(s). SOME STATES DO NOT ALLOW LIMITATIONS ON HOW LONG AN IMPLIED WARRANTY LASTS, SO THE ABOVE LIMITATION MAY NOT APPLY TO YOU.
SOME STATES DO NOT ALLOW FOR THE EXCLUSION OR LIMITATION OF INCIDENTAL OR CONSEQUENTIAL DAMAGES, SO THE ABOVE LIMITATION MAY NOT APPLY TO YOU.

## ITEMIZATION OF PURCHASE

| | | | |
|---|---|---|---|
| 1. | Base Price of Vehicle | $ | 30,998.00 |
| 2. | Accessories | $ | 0.00 |
| 3. | Additional Charges | | |
| a. | *CarMax Processing Fee | $ | 599.00 |
| b. | N/A | $ | 0.00 |
| c. | Optional GAP Waiver Agreement | $ | 1,015.00 |
| d. | N/A | $ | 0.00 |
| e. | Lien Fee | $ | 2.00 |
| f. | Registration Fees | $ | 4.60 |
| g. | FL Sales Tax | $ | 1,537.86 |
| h. | Vehicle Sales Tax County | $ | 50.00 |
| i. | N/A | $ | 0.00 |
| j. | N/A | $ | 0.00 |
| k. | *Optional Electronic Filing Fee | $ | 34.00 |
| l. | FL Title Fee | $ | 75.75 |
| m. | N/A | $ | 0.00 |
| n. | N/A | $ | 0.00 |
| o. | N/A | $ | 0.00 |
| | Total Additional Charges | $ | 3,318.21 |
| 4. | Total Contract Price (1 + 2 + 3) | $ | 34,316.21 |
| 5. | Trade-In Allowance | | |
| a. | Total Trade-In Credit Amount | $ | 6,000.00 |
| b. | Amount of Trade-In to Buyer | $ | 0.00 |
| c. | Discharge of Lien on Trade-In | $ | 12,321.63 |
| | To: CARMAX AUTO FINANCE  $ 12,321.63 | | |
| | To: N/A  $ 0.00 | | |
| d. | Applied Equity to Purchase (5a - 5b - 5c) | $ | 0.00 |
| e. | Remaining Liability for Trade-In to CarMax where 5c is greater than 5a | $ | 6,321.63 |
| 6. | Total Contract Amount Due ((4 + 5e) - 5d) | $ | 40,637.84 |
| 7. | Payments Made Toward Purchase | | |
| a. | Down Payment | $ | 4,000.00 |
| b. | N/A | $ | 0.00 |
| c. | N/A | $ | 0.00 |
| | Total Payments Made Toward Purchase (a + b - c) | $ | 4,000.00 |
| 8. | Other Credits | | |
| a. | N/A | $ | 0.00 |
| 9. | Net Balance Due from the Buyer (6 - (7 + 8a) | $ | 36,637.84 |

Cash N/A   Financed  X   Finance Co. CarMax Business Services, LLC

* This charge represents costs and profit to the dealer for items such as inspecting, cleaning, and adjusting vehicles, and preparing documents related to the sale.

SAFETY RECALLS: YOU ACKNOWLEDGE THAT YOU HAVE REVIEWED THE SAFETY RECALL STATUS BEFORE PURCHASE OF THE VEHICLE. CARMAX URGES BUYER TO HAVE ANY SAFETY RECALL WORK DONE IMMEDIATELY FOLLOWING PURCHASE. CARMAX ASSUMES NO RESPONSIBILITY TO INSPECT FOR, REPAIR OR IMPLEMENT RECALLS.

You acknowledge that you have reviewed a vehicle history report for the Vehicle. You also acknowledge that the Vehicle has the following prior uses, as known at the time of delivery, as:

RENTAL                    This vehicle was used as a rental car before being purchased by CarMax.

By signing, you acknowledge reading the entire Contract (three pages), including any incorporated agreements and the Arbitration Provision, and agree to be bound by all of this Contract's terms and conditions. You certify to being 18 years of age or older and to receiving a fully completed copy of this Contract. This Contract is not binding upon either CarMax or you until signed by an authorized CarMax representative.

OSVALDO NAVARRO
BUYER SIGNATURE

04/02/2024
DATE

ELIZABETH MARIA GALLENO
CO-BUYER SIGNATURE

04/02/2024
DATE

Wally Stump
CARMAX AUTHORIZED REP. NAME

Wally Stump
CARMAX AUTHORIZED REP. SIGNATURE

04/02/2024
DATE

Order #: 63587
FL BO Rev. Date 5/19

Reprint #: 0   DMS Tracking #: 287897
04/02/2024 03:21 PM

MIS ID: 1000002

PFF301
Legal CAA

Composite Exhibit "A"

## USED VEHICLE BUYER'S ORDER

**7-DAY RETURN POLICY:** You may return the Vehicle to CarMax for a refund within seven (7) days assuming the condition of the Vehicle does not change. If you return the Vehicle, CarMax will refund any money paid to CarMax as reflected on this Contract, but will not refund any costs or charges not reflected in this Contract, including, but not limited to, finance company charges.

**ODOMETER:** Unless otherwise indicated, the odometer mileage listed on the Odometer Disclosure Statement on the title (or separate Odometer Disclosure Statement) to the Vehicle is based on the best knowledge and belief of CarMax. You agree that CarMax shall have no liability to you under the Contract or otherwise if the odometer is determined to be inaccurate for reasons beyond the control of CarMax and without CarMax's actual knowledge. This paragraph does not limit the applicability of CarMax's Clean Title Guarantee, which is included as part of this Contract, or any remedies afforded you thereunder.

**PAYMENTS MADE TOWARD PURCHASE OF THE VEHICLE:** If you do not meet your obligations, you may lose the Vehicle you purchased from us. If any payment made by you toward the purchase of the Vehicle (for example, the down payment or a voucher or a CarMax draft) is returned or voided, you agree that you will pay CarMax the amount of that payment within 24 hours of receiving notice. Notice may be written or oral. Payments must be in cash or certified funds. You will be required to pay the amount of the returned check, voided voucher, and/or voided draft plus the maximum NSF fee (if applicable). Alternatively, CarMax may, at its sole discretion, permit you to return the vehicle within 24 hours of giving you written or oral notice. In either event, if return or payment does not occur within 24 hours of written or oral notice to you, you agree that CarMax may choose to exercise one of two options: (1) CarMax may hold you immediately liable for the full unpaid amount or (2) CarMax may cancel this Contract, immediately retake possession of the Vehicle, and collect from you any and all reasonable costs and expenses incurred by CarMax in retaking the Vehicle. Upon return or retaking the Vehicle, you agree to pay for any damage to the Vehicle that occurred while it was in your possession or control. You also agree to pay a use fee of $0.20 per mile based on the difference between the mileage on the Vehicle as stated on the first page of this Contract and the mileage shown on the Vehicle at the time of return or retaking.

**DRIVER'S LICENSE / ID AUTHORIZATION:** You expressly consent to CarMax copying, retaining and using information from your driver's license or government identification card, including personal information, by means of photocopy, scan, swipe, accessing machine-readable information, or otherwise.

**PRIVACY POLICY:** By purchasing the Vehicle you acknowledge and agree to the terms of CarMax's privacy policy found at https://www.carmax.com/privacy-policy, as it may be revised by CarMax from time to time. You acknowledge you have access to and an opportunity to read the privacy policy.

**CARMAX LOGOS AND INSIGNIAS:** By signing this Contract, you consent to CarMax's placement of a CarMax insignia, logo, license plate frame, and/or plate on the Vehicle. If you do not consent, please inform a CarMax representative and any and all insignias, logos, license plate frames, and/or plates will be removed and the Vehicle will be restored to its original appearance at no cost to you.

**COMMUNICATIONS:** You agree that we may monitor and record telephone calls between you and CarMax. You expressly consent that we may contact you (by calls, emails, text messages, or other electronic messages) by any means, including but not limited to the use of prerecorded/artificial voice messages or automatic telephone dialing devices. Your express consent applies to any email addresses or telephone numbers we obtain or you provide in any manner and at any time, including email addresses, residential or cellular telephone numbers for which you may incur voice, data, or other charges.

**USED CAR BUYERS GUIDE: THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.**
**SPANISH TRANSLATION: GUÍA PARA COMPRADORES DE VEHÍCULOS USADOS. LA INFORMACIÓN QUE VE EN EL FORMULARIO DE LA VENTANILLA PARA ESTE VEHÍCULO FORMA PARTE DEL PRESENTE CONTRATO. LA INFORMACIÓN DEL FORMULARIO DE LA VENTANILLA DEJA SIN EFECTO TODA DISPOSICIÓN EN CONTRARIO CONTENIDA EN EL CONTRATO DE VENTA.**

**ARBITRATION PROVISION:** This Arbitration Provision describes when and how a Claim (defined below) shall be arbitrated. Arbitration is a way of resolving disputes before one or more neutral persons, instead of having a trial in court before a judge and/or jury. **By signing this Contract, you and we agree to be bound by the terms of this Arbitration Provision.**

For purposes of this Arbitration Provision, references to "we," "us" and "our" mean the Seller, including its respective subsidiaries, affiliates, agents, employees and officers, or anyone to whom the Seller transfers its rights under the Contract.

IF YOU OR WE CHOOSE ARBITRATION, THEN ARBITRATION SHALL BE MANDATORY, AND:
- ANY CLAIM WILL BE DECIDED BY ARBITRATION AND NOT IN COURT OR BY A JURY TRIAL.
- DISCOVERY AND RIGHTS TO APPEAL ARE LIMITED BY THE ARBITRATION RULES OF THE ARBITRATION ADMINISTRATOR.
- YOU GIVE UP YOUR RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF A CLASS IN A CLASS ACTION ("CLASS ACTION WAIVER").
- OTHER RIGHTS THAT YOU OR WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

**a. What Claims are Covered.** A "Claim" is any claim, dispute or controversy between you and us that in any way arises from or relates to this sale and/or this Contract or the Vehicle and related goods and services that are the subject of the purchase and this Contract or the collection or servicing of this Contract, including but not limited to:

- Initial claims, counterclaims, cross-claims and third-party claims;
- Disputes based on contract, tort, consumer rights, fraud and other intentional torts (at law or in equity, including any claim for injunctive or declaratory relief);
- Disputes based on constitutional grounds or on laws, regulations, ordinances or similar provisions; and
- Disputes about the validity, enforceability, arbitrability or scope of this Arbitration Provision or this Contract, subject to paragraph (f) of this Arbitration Provision.

**b. Commencing Arbitration.** Either you or we may require any Claim to be arbitrated by first sending to the other party, by certified mail, a written notice of dispute ("Notice"). This Notice shall (1) describe the nature and basis of the Claim and (2) set forth the specific relief sought. If we do not reach an agreement to resolve the Claim within 30 days after the Notice is received, you or we may commence an arbitration proceeding.

Arbitration of a Claim must comply with this Arbitration Provision and the applicable rules and procedures of the arbitration Administrator. Arbitration is not mandatory for an individual Claim that you or we may choose to bring in small claims court or the state's equivalent court, if any. If that Claim is transferred, removed or appealed to a different court, you or we then may choose arbitration.

FL BO CAA 5/19

## USED VEHICLE BUYER'S ORDER

**c. Choosing the Administrator.** If you initiate the arbitration proceeding, you may choose either of the following arbitration Administrators: (1) American Arbitration Association, 120 Broadway, New York, NY 10271, www.adr.org, (800) 778-7879 or (2) JAMS, 18881 Von Karman Ave., Suite 350, Irvine, CA 92612, www.jamsadr.com, (800) 352-5267. The Administrator you choose will have rules that apply to the proceeding. Important information regarding the arbitration process and more complete information regarding arbitration procedures may be found at either Administrator's website. If the Administrator you choose is unable or unwilling or ceases to serve as the Administrator, you or we may choose the other Administrator. If both Administrators are unable or unwilling or cease to serve as the Administrator, you or we may choose another Administrator, subject to the other's approval. In all cases, any arbitrator must be a lawyer or a retired judge with at least 10 years of legal experience. If we initiate the arbitration proceeding, we will give you 20 days to choose the Administrator. If you do not choose the Administrator within that time, we will choose one for you. No matter which Administrator is chosen, you shall have the right to be represented by an attorney of your own choosing, subject to any limitations in the Administrator's rules.

**d. Choosing the Location.** Any arbitration hearing that you attend must take place at a location reasonably convenient to your residence.

**e. Paying for Arbitration.** Each Administrator charges fees to administer an arbitration proceeding. This may include fees not charged by a court. When you choose an Administrator, you should carefully review the fees charged by the Administrator. The fees and costs of any arbitration, including any initial filing fees, shall be paid in accordance with the rules and procedures of the Administrator. Each party must pay the expense of that party's attorneys, experts, and witnesses, regardless of which party prevails in the arbitration, unless applicable law or the Administrator's rules, procedures or standards provide otherwise.

**f. Class Action Waiver. You give up your right to participate in a class action. This means that you may not be a representative or member of any class of claimants or act as a private attorney general in court or in arbitration with respect to any Claim.** Further, unless both you and we agree otherwise, the arbitrator may not consolidate more than one person's Claim or Claims. Notwithstanding any other part of this Arbitration Provision, the validity and effect of the Class Action Waiver must be determined only by a court and not by an arbitrator. If a court limits or voids the Class Action Waiver, then this entire Arbitration Provision (except for this paragraph) will be null and void.

**g. Right to Discovery.** The parties shall have the right to discovery of non-privileged information and documents relevant to the Claim, subject to the rules and procedures of the Administrator.

**h. Arbitration Result and Right of Appeal.** Judgment upon the award given by the arbitrator may be entered in any court having jurisdiction. In response to a timely request from either party, the arbitrator must provide a brief written explanation of the basis for any award. The arbitrator's decision is final and binding. except for any right of appeal provided by the Federal Arbitration Act. Any party can appeal the award to a three-arbitrator panel administered by the Administrator, which must reconsider any aspect of the initial award requested by the appealing party. Reference in this Arbitration Provision to the "arbitrator" means the panel of arbitrators if an appeal of the arbitrator's decision has been taken. Subject to applicable law, costs of such an appeal will be borne by the appealing party regardless of the outcome of the appeal, unless applicable law or the Administrator's rules provide otherwise. However, we will consider any good faith, reasonable request for us to pay all or any part of those fees if you are the appealing party.

**i. Governing Law.** This Arbitration Provision is governed by the Federal Arbitration Act and not by any state arbitration law. The arbitrator must apply applicable statutes of limitations and claims of privilege recognized at law, and applicable substantive law consistent with the Federal Arbitration Act. The arbitrator is authorized to award all individual remedies permitted by the substantive law that would apply if the action were pending in court.

**j. Rules of Interpretation.** This Arbitration Provision survives the repayment of all amounts owed to us, the transfer of the Contract, and any bankruptcy by you, to the extent not inconsistent with applicable bankruptcy law. Except as provided in paragraph (f), if any part of this Arbitration Provision is determined to be invalid or unenforceable, this Arbitration Provision and the Contract will remain enforceable. In the event of a conflict or inconsistency between this Arbitration Provision and the applicable arbitration rules or the other provisions of this Contract or any other contract between you and us, this Arbitration Provision will govern. However, in the event that you finance this purchase with or through us, the Arbitration Provision in your Retail Installment Contract is controlling and supersedes the terms of this Arbitration Provision.

**ENTIRE AGREEMENT**: This Contract along with the privacy policy, any Vehicle Purchase/Trade-In Agreement, any Retail Installment Contract, and any Accessories Voucher contains the entire agreement between you and CarMax relating to this Contract. Any other change to this Contract must be in a writing signed by CarMax. No oral modifications to this Contract are binding. Prior written or oral statements, negotiations, communications, or representations about the Vehicle or other products you purchased with this Contract are merged into or superseded by this Contract. Prior written or oral statements, negotiations, communications, or representations about the Vehicle or other products you purchased with this Contract are not binding, unless they are included in this Contract. You acknowledge that CarMax, including its officers, employees, and agents acting on its behalf, has made no promises or representations concerning this Contract other than those that are written in this Contract.

**APPLICABLE LAW**: The Federal Arbitration Act governs the Arbitration Provision of this Contract. Federal law and the law of the State of Florida apply to the rest of this Contract. Except as provided in the Arbitration Provision, if any provision of this Contract is held invalid, such invalidity shall not invalidate the entire contract.

CarMax Store #:  **6016**

END OF CONTRACT

\*\*\*     \*\*\*     \*\*\*     \*\*\*     \*\*\*     \*\*\*     \*\*\*     \*\*\*



# CarMax® **RETAIL INSTALLMENT CONTRACT**

## Consumer Credit Sale

**Contract Number** 54549431
**Contract Date** 04/02/2024

In this Contract, the words "you" and "your" mean anyone signing this Contract as a Buyer or Co-Buyer. The words "we", "us", and "our" mean the Seller or anyone to whom the Seller transfers its rights under this Contract. You understand that you may buy the Vehicle described below for cash or credit. By signing this Contract, you choose to buy the Vehicle on credit under the terms and conditions on all pages of this Contract. If there is a Buyer and a Co-Buyer, you are each individually liable to us for any amount due under this Contract.

**Seller** CarMax Auto Superstores, Inc. — 3223 US HIGHWAY 98 N — LAKELAND, FL 33805
Name / Address / Zip Code

**Buyer** OSVALDO NAVARRO — 802 PINE CONE DR — DAVENPORT, FL 33897-4669
Name / Address / Zip Code

**Co-Buyer** ELIZABETH MARIA GALLENO — 802 PINE CONE DR — DAVENPORT, FL 33897
Name / Address / Zip Code

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your downpayment of $ 4,000.00 |
|---|---|---|---|---|
| 8.39 % | $ 10,317.04 e* | $ 36,766.64 | $ 47,083.68 e* | $ 51,083.68 e* |

### Your Payment Schedule will be:

| Number of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 72 | S 653.94 | Monthly, beginning 05/17/2024 |

*e means an estimate

**Security.** You are giving a security interest in the motor vehicle being purchased.

**Late Charge.** If payment is not received in full within 10 days after it is due, you will pay a late charge of 5% of the unpaid installment.

**Prepayment.** If you pay amounts owed under this Contract early, you will not have to pay a penalty.

**Additional Information.** See the remainder of this Contract for additional information about nonpayment, default, any required repayment in full before the scheduled due date, prepayment refunds, and security interests.

---

**Optional GAP Waiver Agreement (GAP contract).** A GAP contract is a debt cancellation agreement. It is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. The charge for a GAP contract is in item D.1. Your GAP contract is a part of this Contract. See your GAP contract for details on the protection it provides.

Term ____72____ (in months)

I want the optional GAP contract.

Buyer Signs: _OSVALDO NAVARRO_

You agree to buy and we agree to sell you the following Vehicle:

Year/Make/Model 2023 GMC ACADIA
VIN 1GKKNML47PZ228670
New _____ Used ____X____

The primary purpose and use for which you are purchasing the Vehicle is:
Personal, Family, or Household __X__
Business or Commercial ____ Agricultural ____

As part of this transaction, you sold the following vehicle(s) to Seller as a 'Trade-In':

Year/Make/Model 2011 LINCOLN MKZ
VIN 3LNHL2GC3BR771069

Year/Make/Model N/A
VIN N/A

### YOUR PROMISE TO PAY

You agree to pay us the Amount Financed and Finance Charge provided for in this Contract according to the Payment Schedule above. This is a simple finance charge contract. This means we will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed. The Finance Charge, Total of Payments, and Total Sale Price shown above are based on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Also, if you pay late it is likely that your final payment will be larger than originally scheduled. You must make your payments to the Seller at the address shown above. If this Contract is transferred, you agree to make your payments to the subsequent holder of this Contract (Assignee) at the address provided by the Assignee or Seller.

### ITEMIZATION OF AMOUNT FINANCED

| | | | |
|---|---|---|---|
| **A. CASH PRICE** | | | |
| 1. | Cash Price of Vehicle | $ | 30,998.00 |
| 2. | Cash Price of CarMax Accessories | $ | 0.00 |
| 3. | CarMax Processing Fee* | $ | 599.00 |
| 4. | Sales / Excise Tax | $ | 1,587.86 |
| 5. | Other: Optional Electronic Filing Fee + | $ | 34.00 |
| 6. | Total Cash Price [1 through 5] | $ | 33,218.86 |
| **B. DOWNPAYMENT** | | | |
| 1. | Cash Downpayment | $ | 4,000.00 |
| 2. | Credit From "Trade-In" Sold to CarMax | | |
| | a. Value of "Trade-In" | $ | 6,000.00 |
| | b. Proceeds from "Trade-In" Retained by Buyer | $ | 0.00 |
| | c. Pay-Off of "Trade-In" | $ | 12,321.63 |
| | d. Net Value of "Trade-In" [a minus b minus c, if negative, enter "0" and see line D.4. below] | $ | 0.00 |
| 3. | Other: N/A | $ | 0.00 |
| 4. | Total Downpayment [1 through 3] | $ | 4,000.00 |
| **C. UNPAID BALANCE OF CASH PRICE [A minus B]** | | $ | 29,218.86 |
| **D. OTHER CHARGES INCLUDING AMOUNTS PAID TO OTHERS ON YOUR BEHALF** | | | |
| 1. | Optional GAP Waiver Agreement | $ | 1,015.00 |
| 2. | To Public Officials | | |
| | a. FL Registration Fees | $ | 4.60 |
| | b. FL Title Fees | $ | 75.75 |
| | c. N/A | $ | 0.00 |
| | d. N/A | $ | 0.00 |
| | e. FL Lien Fee | $ | 2.00 |
| | f. FL Documentary Stamp Tax | $ | 128.80 |
| | g. N/A | $ | 0.00 |
| | h. N/A | $ | 0.00 |
| | i. N/A | $ | 0.00 |
| 3. | To N/A for Optional Extended Service Contract | $ | 0.00 |
| 4. | To CARMAX AUTO FINANCE for Pay-Off of the "Trade-In" where Pay-Off exceeds value of "Trade-In" [B(3)(c) minus B(3)(a)] | $ | 6,321.63 |
| 5. | **Total of Other Charges and Amounts Paid to Others on Your Behalf [1 through 4]** | $ | 7,547.78 |
| **E. AMOUNT FINANCED [C plus D]** | | $ | 36,766.64 |

*Seller may retain a portion of this amount.

* This fee represents costs and profit to the dealer for items such as inspecting, cleaning, and adjusting vehicles, and preparing documents related to the sale.

Buyer's month of birth: December

---

This Contract has 4 pages, plus any optional GAP Waiver Agreement. This is Page 1. By initialing below you represent that you have read and agree to all provisions on all pages.

Buyer's Initials _ON_          Co-Buyer's Initials _EMG_

RIC9009
Order #:
Rev. Date 06/20          DMS Tracking #: 287804          04/02/2024 03:21 PM          Reprint #: 0          MIS ID: 50000004          Legal - GF

# RETAIL INSTALLMENT CONTRACT
## Other Important Agreements

**Your Representations.** You promise that you have given true and correct information in your credit application. You understand that in entering this Contract we have relied on the representations you have made to us. Upon request, you agree to provide us with documents and other information necessary to verify any item contained in your credit application.

**Applicable Law.** Federal law and the law of the State of Florida apply to this Contract. If any provision is not valid, all others stay valid to the extent allowed by applicable law.

**Late Charge.** You will pay a late charge as described in the Late Charge section on Page 1 of this Contract.

**Returned Payment Charge.** You will pay a charge for any payment instrument that is not honored by your financial institution. The charge may not exceed the bank fees incurred for the return of the payment instrument and the greater of 5% of the face amount of the payment instrument or: $25 if the payment instrument is $50 or less; $30 if payment instrument exceeds $50 but is less than or equal to $300; $40 if payment instrument exceeds $300.

**Care, Use, and Location of the Vehicle.** You agree to pay us all you owe under this Contract even if the Vehicle is damaged, destroyed, or missing. You agree to keep the Vehicle in good condition and repair. If there is any loss or damage to the Vehicle, you will give us prompt written notice of the loss or damage. You agree not to use the Vehicle for hire or to sell, rent, lease, or transfer any interest in the Vehicle or this Contract. You agree that you will not permit the Vehicle to be used in any illegal manner or expose the Vehicle to misuse, seizure, confiscation, or involuntary transfer. The Vehicle will be kept at the address you provided to us in this Contract as shown on Page 1. You agree to notify us in writing of any change in your address or the location at which the Vehicle is regularly located. You are not allowed to remove the Vehicle from the United States. You may, however, take the Vehicle to Canada as long as it is for a period of 30 days or less.

**Insurance Requirements.** You agree to have physical damage insurance covering loss or damage to the Vehicle as long as amounts are owed under this Contract. The insurance must have comprehensive, collision, fire, and theft coverage in amounts acceptable to us and with the minimum available deductible. All required insurance must be with a properly licensed insurer reasonably acceptable to us and must name us as an additional insured and loss-payee. You agree to give us evidence of all required insurance promptly upon request. You agree that any insurance proceeds payable due to damage or loss of the Vehicle will be paid directly and solely to us. At our choice, we may use the insurance proceeds to repair the Vehicle or to pay amounts owed under this Contract. You agree that we may settle any insurance claim or sign any insurance checks on your behalf as necessary and if allowed by law.

**Failure to Maintain Insurance.** If you fail to maintain the required physical damage insurance, we may buy it for you. At our choice, the insurance we buy may only cover our interest in the Vehicle and be limited to what you owe under this Contract at the time. This means the insurance we obtain may not cover your interest in the Vehicle or any loss that you incur. We will charge you for any insurance we purchase. The insurance we buy may cost more than the insurance you could buy on your own. The charge for the insurance will be the amount advanced for it and a finance charge at the Annual Percentage Rate shown on Page 1 of this Contract or, if less, the highest rate allowed by law.

**Security Interest.** You give us a security interest in the Vehicle, any proceeds received for the Vehicle, and any accessories, equipment, and replacement parts installed on the Vehicle. You also give us a security interest in any insurance, service, or other contracts we finance for you and all proceeds from any insurance, service, or other contracts on the Vehicle, including refunds of premiums or charges from the contracts we finance for you. The security interest you are giving us secures all amounts owed by you under this Contract and all the other agreements you have made in this Contract.

**Optional Service or GAP Contracts.** This Contract may contain charges for an optional service or GAP contract. If you are in default under this Contract, you agree that we may claim benefits under any optional contract or cancel it to obtain a refund for unearned charges and reduce amounts you owe. If you cancel an optional contract, you authorize us to receive any refund for unearned charges and apply it to what you owe under this Contract.

**"Trade-In" and Downpayment.** You promise that you own and have valid title to any vehicle you sold to us as a "Trade-In." You represent that any "Trade-In" vehicle is free from any lien or security interest except as you have disclosed to us in writing. You promise that you have made the downpayment shown in the Itemization of Amount Financed on Page 1 of this Contract and that you have not borrowed it.

**Title, Taxes, and Other Charges.** You agree to make sure that the title to the Vehicle shows our security interest. You also agree that we will be the only party with a security interest in the Vehicle and that our security interest will be the only security interest that appears on the title. You agree that you are, or will be, the registered owner of the Vehicle and that you will comply with all registration, licensing, tax, and title laws that apply to the Vehicle. You agree to pay when due all taxes, fees, repair bills, storage bills, fines, assessments, and other charges relating to the Vehicle. At our choice, we may pay any of these items to protect our interest in the Vehicle. If we do so and if allowed by law, you agree to repay us at our request.

**Default and Required Repayment in Full.** You will be in default if you fail to make any payment required by this Contract. You will also be in default if you break any other promise you have made in this Contract or if a bankruptcy or insolvency proceeding is initiated by you or against you. If you default we may require that you pay all you owe on this Contract at once. All amounts owed following your default will continue to accrue finance charge or interest at the Annual Percentage Rate shown on Page 1 of this Contract or the highest rate allowed by law until paid in full.

**Other Remedies Upon Default.** Upon your default we may take (repossess) the Vehicle from you as long as we do so peacefully. All accessories, equipment or replacement parts will remain with the Vehicle following repossession.

**Getting the Vehicle and Property Back After Repossession.** If we repossess the Vehicle, you have the right to get it back until we sell it. This is your right to redeem. We will tell you what you need to do or how much you need to pay to redeem the Vehicle. If any personal property is in the Vehicle, we will store it for you at your expense. If you do not pick up your personal property, we will sell it if the law allows us to do so.

**Sale of the Repossessed Vehicle.** We will send you a written notice of sale before we sell the Vehicle. We will apply money from a sale to our expenses and then to amounts you owe under this Contract. Our expenses may include costs incurred by us in repossessing the Vehicle, holding and storing it, preparing it for sale, and selling it. If there is money left over, we will pay it to you unless we are required to pay it to someone else. If there is not enough money to pay all you owe, you will have to pay us the remaining balance.

**Collection Costs.** If we refer this Contract for collection or enforcement to an attorney who is not our salaried employee, you agree to pay our reasonable attorney fees, plus court costs.

**Application of Payments, Partial Prepayments, and Deferred or Extended Payments.** We may apply each payment to earned and unpaid finance charge and to other amounts you owe under this Contract in any order we choose. If you make a partial prepayment you must still continue to make your regular monthly payments as scheduled in this Contract. Because this is a simple finance charge contract you will be required to pay additional finance charge as a result of exercising an extension or deferment option.

**Delay in Enforcing Rights.** We will not lose any of our rights under this Contract if we delay or refrain from enforcing them. For example, we may extend the time for making some payments without extending others. Our acceptance of any late or partial payment does not excuse your late or partial payment or mean that you may continue to make late or partial payments.

**Communications.** You agree that we may monitor and record telephone calls regarding this Contract. You expressly consent that we may contact you (by calls, emails, text messages or other electronic messages) for any purpose related to this Contract by any means, including but not limited to the use of prerecorded/artificial voice messages or automatic telephone dialing devices. Your express consent applies to any email addresses or telephone numbers we obtain or you provide in any manner and at any time, including email addresses or cellular telephone numbers for which you may incur voice, data or other charges.

---

**This Contract has 4 pages, plus any optional GAP Waiver Agreement. This is Page 2. By initialing below you represent that you have read and agree to all provisions on all pages.**

Buyer's Initials ___PN___          Co-Buyer's Initials ___PMG___

RIC9009
Rev. Date 06/20

## RETAIL INSTALLMENT CONTRACT
### Other Important Agreements

---

# NO LIABILITY INSURANCE INCLUDED
### LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS CONTRACT.

---

**PROPERTY INSURANCE: YOU ARE REQUIRED TO OBTAIN AND MAINTAIN INSURANCE ON THE VEHICLE, ENDORSED TO PROTECT US AS LOSS-PAYEE. YOU MAY OBTAIN THE INSURANCE FROM ANY AGENT OR INSURANCE COMPANY YOU CHOOSE REASONABLY ACCEPTABLE TO US.**

YOUR INSURANCE INFORMATION

LIENHOLDER/LOSS-PAYEE CarMax Business Services, LLC          INSURED'S NAME  OSVALDO NAVARRO

PHYSICAL DAMAGE DEDUCTIBLES – COMPREHENSIVE $ 1000.00          COLLISION $ 1000.00

INSURANCE COMPANY  STATE FARM GENERAL INSURANCE COMPANY

POLICY NUMBER  4079664C275914          EFFECTIVE DATE  11/10/2023    EXPIRATION DATE  05/10/2024

INSURANCE AGENT NAME  MATTHEW C WESSEL INS AGENCY          TELEPHONE NUMBER  (305) 552-7003

You agree that you have or will obtain the required insurance coverage as shown above and you acknowledge that this is required by the Insurance Requirements section on Page 2 of this Contract.

---

**USED CAR BUYERS GUIDE. THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.**

**SPANISH TRANSLATION: GUÍA PARA COMPRADORES DE VEHÍCULOS USADOS. LA INFORMACIÓN QUE VE EN EL FORMULARIO DE LA VENTANILLA PARA ESTE VEHÍCULO FORMA PARTE DEL PRESENTE CONTRATO. LA INFORMACIÓN DEL FORMULARIO DE LA VENTANILLA DEJA SIN EFECTO TODA DISPOSICIÓN EN CONTRARIO CONTENIDA EN EL CONTRATO DE VENTA.**

The following notice applies only to purchases primarily for personal, family, or household purposes.

### NOTICE

**ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

You agree that you

### VEHICLE RETURN POLICY

You may return the Vehicle to CarMax for a refund within 7 calendar days if the condition of the Vehicle does not change. This policy only applies to used vehicles.

### ENTIRE AGREEMENT

This Contract contains the entire agreement between you and us relating to this Contract. We may agree to extend or defer a payment and provide you written confirmation. Any other change to this Contract must be in a writing signed by us. No oral modifications to this Contract are binding.

### ELECTRONIC DISCLOSURE

☒ If checked, you agree to use electronic records and electronic signatures to document this Contract. Your electronic signatures on electronic records will have the same effect as signatures on paper documents. We may designate one authoritative copy of this Contract. If we do, the authoritative copy will be the electronic copy in a document management system we designate for storing authoritative copies. We may convert the authoritative copy to a paper original. We will do so by printing one paper copy marked "Original." This paper original will have your electronic signature on it. It will have the same effect as if you had signed it originally on paper. If you agree to use electronic records and electronic signatures, we will comply with all applicable federal, state and local laws and regulations.

Florida documentary stamp tax required by law in the amount of $ 128.80   has been paid or will be paid directly to the Department of Revenue. Certificate of Registration #  62-8000049555-5          .

---

### Notice to the Buyer
1. Do not sign this Contract before you read it or if it contains any blank spaces.

2. You are entitled to an exact copy of the Contract you sign. Keep it to protect your legal rights.

---

**This Contract has 4 pages, plus any optional GAP Waiver Agreement. This is Page 4. By signing below you represent that you have read and agree to all provisions on all pages, including the Arbitration Provision on Page 3 of this Contract. You are also confirming that you have received a completely filled-in copy of this Contract and any optional GAP Waiver Agreement, each of which has been signed by the Seller.**

Seller  **CarMax Auto Superstores, Inc.**          Buyer's Signature  OSVALDO NAVARRO

By  Wally Stump          Co-Buyer's Signature  ELIZABETH MARIA GALLENO

---

### ASSIGNMENT

Seller hereby sells, assigns and transfers to  CarMax Business Services, LLC          (Assignee) this Contract, all obligations of Buyer and Co-Buyer hereunder, all rights, powers, and privileges herein given to Seller, and all right, title, and interest of Seller in and to the property securing this Contract. If on the date of this assignment there is in effect a Dealer Agreement between Seller and Assignee pertaining to the sale of contracts to Assignee by Seller, the sale and assignment of this Contract to Assignee is made subject to all the terms and conditions of that Dealer Agreement.

Seller/Assignor  Wally Stump

Date  04/02/2024          Title  CarMax Associate

RIC9009
Rev. Date 06/20

This copy was created by eOriginal SmartSign® Web on Apr 02, 2024 03:41:40 PM EDT

# RETAIL INSTALLMENT CONTRACT
## Other Important Agreements

### ARBITRATION PROVISION

04/02/2024 03:21 PM
DMS Tracking # 287895       Reprint # 0



This Arbitration Provision describes when and how a Claim (defined below) shall be arbitrated. Arbitration is a way of resolving disputes before one or more neutral persons, instead of having a trial in court before a judge and/or jury. **By signing this Contract, you and we agree to be bound by the terms of this Arbitration Provision.**

For purposes of this Arbitration Provision, references to "we," "us" and "our" mean the Seller, including its respective subsidiaries, affiliates, agents, employees and officers, or anyone to whom the Seller transfers its rights under the Contract.
**IF YOU OR WE CHOOSE ARBITRATION, THEN ARBITRATION SHALL BE MANDATORY, AND:**

- ANY CLAIM WILL BE DECIDED BY ARBITRATION AND NOT IN COURT OR BY A JURY TRIAL.
- DISCOVERY AND RIGHTS TO APPEAL ARE LIMITED BY THE ARBITRATION RULES OF THE ARBITRATION ADMINISTRATOR.
- YOU GIVE UP YOUR RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF A CLASS IN A CLASS ACTION ("CLASS ACTION WAIVER").
- OTHER RIGHTS THAT YOU OR WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

**a. What Claims are Covered.** A "Claim" is any claim, dispute or controversy between you and us that in any way arises from or relates to this consumer credit sale, the purchase you are financing by way of this Contract, the Vehicle and related goods and services that are the subject of the purchase and this Contract, or the collection or servicing of this Contract, including but not limited to:

- Initial claims, counterclaims, cross-claims and third-party claims;
- Disputes based on contract, tort, consumer rights, fraud and other intentional torts (at law or in equity, including any claim for injunctive or declaratory relief);
- Disputes based on constitutional grounds or on laws, regulations, ordinances or similar provisions; and
- Disputes about the validity, enforceability, arbitrability or scope of this Arbitration Provision or this Contract, subject to paragraph (f) of this Arbitration Provision.

**b. Commencing Arbitration.** Either you or we may require any Claim to be arbitrated by first sending to the other party, by certified mail, a written notice of dispute ("Notice"). This Notice shall (1) describe the nature and basis of the Claim and (2) set forth the specific relief sought. If we do not reach an agreement to resolve the Claim within 30 days after the Notice is received, you or we may commence an arbitration proceeding.

Arbitration of a Claim must comply with this Arbitration Provision and the applicable rules and procedures of the arbitration Administrator. Arbitration is not mandatory for an individual Claim that you or we may choose to bring in small claims court or the state's equivalent court, if any. If that Claim is transferred, removed or appealed to a different court, you or we then may choose arbitration.

**c. Choosing the Administrator.** If you initiate the arbitration proceeding, you may choose either of the following arbitration Administrators: (1) American Arbitration Association, 120 Broadway, New York, NY 10271, www.adr.org, (800) 778-7879 or (2) JAMS, 1920 Main Street, Suite 300, Irvine, CA 92614, www.jamsadr.com, (800) 352-5267. The Administrator you choose will have rules that apply to the proceeding. Important information regarding the arbitration process and more complete information regarding arbitration procedures may be found at either Administrator's website. If the Administrator you choose is unable or unwilling or ceases to serve as the Administrator, you or we may choose the other Administrator. If both Administrators are unable or unwilling or cease to serve as the Administrator, you or we may choose another Administrator, subject to the other's approval. In all cases, any arbitrator must be a lawyer or a retired judge with at least 10 years of legal experience. If we initiate the arbitration proceeding, we will give you 20 days to choose the Administrator. If you do not choose the Administrator within that time, we will choose one for you. No matter which Administrator is chosen, you shall have the right to be represented by an attorney of your own choosing, subject to any limitations in the Administrator's rules.

**d. Choosing the Location.** Any arbitration hearing that you attend must take place at a location reasonably convenient to your residence.

**e. Paying for Arbitration.** Each Administrator charges fees to administer an arbitration proceeding. This may include fees not charged by a court. When you choose an Administrator, you should carefully review the fees charged by the Administrator. The fees and costs of any arbitration, including any initial filing fees, shall be paid in accordance with the rules and procedures of the Administrator. Each party must pay the expense of that party's attorneys, experts, and witnesses, regardless of which party prevails in the arbitration, unless applicable law or the Administrator's rules, procedures or standards provide otherwise.

**f. Class Action Waiver. You give up your right to participate in a class action. This means that you may not be a representative or member of any class of claimants or act as a private attorney general in court or in arbitration with respect to any Claim.** Further, unless both you and we agree otherwise, the arbitrator may not consolidate more than one person's Claim or Claims. Notwithstanding any other part of this Arbitration Provision, the validity and effect of the Class Action Waiver must be determined only by a court and not by an arbitrator. If a court limits or voids the Class Action Waiver, then this entire Arbitration Provision (except for this paragraph) will be null and void.

**g. Right to Discovery.** The parties shall have the right to discovery of non-privileged information and documents relevant to the Claim, subject to the rules and procedures of the Administrator.

**h. Arbitration Result and Right of Appeal.** Judgment upon the award given by the arbitrator may be entered in any court having jurisdiction. In response to a timely request from either party, the arbitrator must provide a brief written explanation of the basis for any award. The arbitrator's decision is final and binding, except for any right of appeal provided by the Federal Arbitration Act. Any party can appeal the award to a three-arbitrator panel administered by the Administrator, which must reconsider any aspect of the initial award requested by the appealing party. Reference in this Arbitration Provision to the "arbitrator" means the panel of arbitrators if an appeal of the arbitrator's decision has been taken. Subject to applicable law, costs of such an appeal will be borne by the appealing party regardless of the outcome of the appeal, unless applicable law or the Administrator's rules provide otherwise. However, we will consider any good faith, reasonable request for us to pay all or any part of those fees if you are the appealing party.

**i. Governing Law.** This Arbitration Provision is governed by the Federal Arbitration Act and not by any state arbitration law. The arbitrator must apply applicable statutes of limitations and claims of privilege recognized at law, and applicable substantive law consistent with the Federal Arbitration Act. The arbitrator is authorized to award all individual remedies permitted by the substantive law that would apply if the action were pending in court.

**j. Rules of Interpretation.** This Arbitration Provision survives the repayment of all amounts owed to us, the transfer of the Contract, and any bankruptcy by you, to the extent not inconsistent with applicable bankruptcy law. Except as provided in paragraph (f), if any part of this Arbitration Provision is determined to be invalid or unenforceable, this Arbitration Provision and the Contract will remain enforceable. In the event of a conflict or inconsistency between this Arbitration Provision and the applicable arbitration rules or the other provisions of this Contract or any other contract between you and us, this Arbitration Provision will govern.

---

**This Contract has 4 pages, plus any optional GAP Waiver Agreement. This is Page 3. By initialing below you represent that you have read and agree to all provisions on all pages.**

Buyer's Initials ___ BN _____   Co-Buyer's Initials ___ EMG _____

RIC9009
Rev. Date 06/20

MIS ID: 50000005

This copy was created by eOriginal SmartSign® Web on Apr 02, 2024 03:41:56 PM EDT.

# GAP Waiver Agreement

**Buyer Information**

Name OSVALDO NAVARRO

Street Address 802 PINE CONE DR                                       Apt #

City DAVENPORT                                  State FL              Zip Code 33897-4669

**Co-Buyer Information**

Name ELIZABETH MARIA GALLENO

Street Address 802 PINE CONE DR                                       Apt #

City DAVENPORT                                  State FL              Zip Code 33897

**Covered Vehicle Information**

Make GMC                Model ACADIA                  Year 2023

Vehicle ID Number 1GKKNML47PZ228670           Odometer Reading 12,474

**Dealer Information**

Dealer Name CarMax Auto Superstores, Inc.

Street Address 3223 US HIGHWAY 98 N

City LAKELAND                                   State FL              Zip Code 33805

**Assignee**

Name CarMax Business Services, LLC      Address PO BOX 440609, KENNESAW, GA 30160

**GAP Waiver Information**

Retail Installment Contract Number 54549431                Date 04/02/2024

Cost of GAP Waiver **$ 1015.00                      Term (in Months) 72

**The dealer may retain a portion of this charge.

See additional terms and conditions below and on the reverse side for important information on eligibility, requirements, conditions and exclusions that could reduce or eliminate the benefits you receive under this agreement.

THE PURCHASE OF THIS GUARANTEED ASSET PROTECTION (GAP) WAIVER AGREEMENT IS VOLUNTARY, WILL NOT BE A FACTOR IN THE CREDIT APPROVAL PROCESS, AND NEITHER THE EXTENSION OF CREDIT, THE TERMS OF THE CREDIT, NOR THE TERMS OF THE RELATED MOTOR VEHICLE SALE MAY BE CONDITIONED UPON THE PURCHASE OF THIS GAP WAIVER AGREEMENT. By signing below, you acknowledge that the information you gave us is true and correct to the best of your knowledge. You acknowledge that your purchase of this agreement is voluntary and is not required for you to obtain credit. You may be able to obtain GAP coverage from your primary insurance carrier. You also acknowledge that you read and understood this agreement, including the additional terms and conditions that appear below and on the reverse side, and received a completed copy of the agreement before signing it. You may cancel this agreement within 30 days of purchase and obtain a full refund unless you have received a total loss benefit. After 30 days, refunds will be calculated pro-rata, and we may assess an administrative fee of $30.00, unless otherwise required by applicable state law.

I (We) agree to purchase the GAP Waiver Agreement.

| OSVALDO NAVARRO | 04/02/2024 | Agreed to by: Wally Stump |
|---|---|---|
| Buyer Signature | Date | Dealer Representative |

| ELIZABETH MARIA GALLENO | 04/02/2024 |
|---|---|
| Co-Buyer Signature | Date |

ADMINISTRATOR WILL INVESTIGATE AND PROSECUTE ANY SUSPECTED FRAUDULENT CLAIMS TO THE FULLEST EXTENT OF THE LAW.  ADMINISTRATOR WILL CANCEL ANY AGREEMENT IF THE BUYER FRAUDULENTLY OBTAINS A RETAIL INSTALLMENT CONTRACT.

## Additional Terms and Conditions

1. **Definitions.** This GAP Waiver Agreement ("agreement") is between buyer and co-buyer (if any) (referred to as "you" or "your") and the dealer, or, if assigned, the assignee (referred to as "we", "us", or "our"). This agreement amends and is a part of the Retail Installment Contract you signed ("contract"). Following assignment of the contract, the assignee is solely responsible for providing the benefits described under this agreement. As used in this agreement, the words below have the following meaning:

(a) Administrator: Safe-Guard Products International, LLC.

(b) Actual Cash Value (ACV): The value of the covered vehicle as determined by the primary insurer in the event of a total loss or unrecovered theft less your physical damage deductible up to $1000. If there is no collectible primary physical damage or theft insurance in effect on the date of loss or if the primary insurance policy has either a stated value or a limit of liability that is less than the value of the covered vehicle, actual cash value means the value as determined by an appraisal conducted by the Administrator.

(c) Total Loss: A loss where the cost to repair or replace the covered vehicle would exceed the actual cash value, as determined by the primary insurer or as determined by us if the covered vehicle is not protected by a primary insurer.

(d) Covered Vehicle: The vehicle described in the Covered Vehicle Information section of this agreement.

(e) Date of Loss: The date on which the covered vehicle is initially damaged or stolen, which results in a total loss or an unrecovered theft.

(f) Primary Insurer: The insurance company that: 1) provides you the physical damage coverage, as required in the contract, on the covered vehicle, or 2) provides liability coverage to any person who has caused the covered vehicle to incur a total loss, and for which that person is legally liable.

(g) Total Loss Benefit: The amount of the unpaid net balance we will waive in the event that the covered vehicle is declared a total loss or subject to an unrecovered theft.

(h) Unpaid Net Balance: The amount you owe as of the date of loss in accordance with the terms and conditions stated in the contract. This amount does not include any: unearned finance charges, payments due but unpaid, deferred or extended payments, late charges, disposition fees, termination fees, penalty fees, or other items added to the contract balance after origination. As a result, we will not waive these amounts and you will remain obligated to pay them. We will also reduce the amount you owe by any refundable prepaid taxes and fees or other proceeds you or we may recover by canceling insurance coverages, service contracts or warranties. before we compute the total loss benefit.

(i) Unrecovered Theft: A covered vehicle reported as stolen to both the police and the primary insurer, who have made reasonable efforts, but have failed to find and return the covered vehicle within 30 days from the date of loss. A covered vehicle improperly taken by a buyer, where both the buyer's and the covered vehicle's whereabouts are not known, shall not be deemed for the purposes of this agreement an unrecovered theft.

(j) Settlement Date: The date the primary insurer issued the settlement check or denial letter corresponding to the total loss or unrecovered theft of the covered vehicle.

Administrator: Two Concourse Parkway, Suite 500, Atlanta, Georgia 30328 • 866-936-0208

Page 1 of 2



| CMGPSET | DMS Tracking # 287896 | Reprint # 0 | MIS ID: 2900000 | Rev. 11/23 |
|---|---|---|---|---|
| | 04/02/2024 03:21 PM | | Order #: 63587 | PFF2036B |

# GAP Waiver Agreement

**2. Coverage.** Your contract requires you to pay us the outstanding unpaid balance of your contract even if the covered vehicle is a total loss or subject to an unrecovered theft. By entering into this agreement, you and we agree that we will waive our rights to recover part of your outstanding unpaid balance (total loss benefit) if the covered vehicle is considered a total loss or is subject to an unrecovered theft. The Administrator will compute the part that will be waived (total loss benefit) by subtracting the ACV of the covered vehicle from the unpaid net balance. Any physical damage deductible amount in excess of $1,000 remains your responsibility. Your maximum total loss benefit under this agreement is $50,000.

**3. Coverage Exclusions.** To the extent permitted by applicable law, this agreement does not apply to loss of or damage to the covered vehicle:

(a) Caused by your fraudulent, dishonest, or illegal acts, or those of your family members or other person acting under your authority;
(b) Caused by your willful, wanton, or recklessly negligent acts, or those of your family members or other person acting under your authority;
(c) Caused by the legal confiscation of the covered vehicle by a public official;
(d) Caused by use of the covered vehicle as part of a commercial fleet or other commercial purpose or as a public or livery conveyance;
(e) Caused by wear and tear, freezing, mechanical/electrical breakdown or failure;
(f) Caused by any act that occurs outside the United States, its territories, or Canada;
(g) If the purchase date of the covered vehicle is different than the purchase date of this agreement or the total loss occurs prior to the date of this agreement;
(h) When the total loss or unrecovered theft results directly or indirectly from your or your authorized representative's driving under the influence, driving while intoxicated, or forgery;
(i) Due to war, whether or not declared, invasion, civil war, insurrection, rebellion, revolution or terrorism;
(j) Due to any acts occurring after the original maturity date of the contract or during or after the repossession of the covered vehicle;
(k) Caused by conversion, embezzlement, or secretion by any person in lawful possession of the covered vehicle;
(l) Due to the operation, use, or maintenance of the covered vehicle in any race or speed contest.

**4. Coverage Limitations.**
(a) If the term of the contract exceeds 84 months or the payments under the contract vary, the unpaid net balance will be recalculated as if the term of the contract was 84 months and the payment schedule will be recalculated as if the contract had uniform repayment terms and all payments were made on time. The uniform payments and term requirements do not apply to the final payment due on a balloon loan.
(b) This agreement is transferable if the covered vehicle is transferred while the contract remains in effect payable to us or the original assignee.
(c) This agreement terminates if you refinance your contract or pay your contract in full.
(d) This agreement is void if you have intentionally misrepresented or concealed any material facts, or in the case of fraud.
(e) This agreement does not apply if the covered vehicle has a salvage or junk title.
(f) The total loss benefit under this agreement will not include any deductions taken by the primary insurer for prior damage, missing items, excess mileage and wear, salvage, excess towing, custom equipment and storage.
(g) The total loss benefit under this agreement will not include the amount of sales tax and title fee reimbursement owed by the primary insurer in applicable states.
(h) This agreement only provides coverage if the covered vehicle is deemed a total loss or an unrecovered theft. No coverage is provided under this agreement if the covered vehicle is deemed a partial loss.
(i) This agreement does not provide coverage for damage related to any personal property attached to or within the covered vehicle.

**5. Cancellation.** You may cancel this agreement by providing CarMax Customer Relations or a CarMax dealer location with a written cancellation notice. The Administrator will cancel this agreement effective the date it receives written notice. The written request for a cancellation must be made within ninety (90) days of the requested effective date of cancellation unless the cancellation is a result of the early termination of the contract, in which case we will initiate the cancellation of the GAP waiver. If you or we cancel this agreement within 30 days of purchase, you may obtain a full refund. If you or we cancel this agreement after 30 days, the Administrator will calculate any refund pro-rata, and may assess an administrative fee of $30.00, unless otherwise required by applicable state law. No refund will be provided if you have received or will be receiving, a total loss benefit. If you require additional information or assistance with canceling this agreement, you may contact CarMax Customer Relations at 800-519-1511 or a CarMax dealer location.

**6. Total Loss Benefit Claims Procedures.** To initiate a request for a total loss benefit, you must submit a written request for a total loss benefit or at least 1 of the documents listed below to the Administrator within 90 days of the settlement date (or within 90 days of the date of loss if there is no primary insurer). Additionally, you must submit all documents listed below to the Administrator within 210 days of the settlement date (or within 210 days of the date of loss if there is no primary insurer) before any total loss benefit under this agreement can be processed. It is your responsibility to provide the required documentation to the Administrator. Failure to properly initiate a claim within the required 90 days and/or provide complete documentation within the required 210 days will VOID this agreement and no total loss benefit will be processed. You should submit all documents to the Administrator at Two Concourse Parkway, Suite 500, Atlanta, GA 30328, 866-936-0208.
(a) If you have insurance:
(i) A copy of the primary insurer's settlement statement, substantiating the date and cause of the total loss of the covered vehicle, the gross settlement amount, the deductible, and the net settlement amount;
(ii) A copy of the primary insurer's total loss valuation report, providing the basis for the calculation of ACV of the covered vehicle.
(iii) A copy of the primary insurer's settlement check.
(b) If you fail to maintain proper insurance coverage or your insurance is uncollectible, you must provide the Administrator written notice of the date of loss. The Administrator will conduct an appraisal to calculate the ACV of the covered vehicle immediately before the total loss or unrecovered theft. To the extent permitted by applicable law, the cost of the appraisal will be deducted from the amount of any total loss benefit and you must pay this cost to the Administrator in the event no total loss benefit settlement is due.
(c) Copy of your contract.
(d) Complete payment history under the contract.
(e) Copy of the buyer's order or purchase order signed at the time of your original contract, including information on the make, model, year, mileage, and vehicle options.
(f) Copy of this agreement.
(g) Copy of any police report made in connection with the covered vehicle's total loss or unrecovered theft.
(h) Documents showing refund amounts of any cancelable ancillary products purchased at the time the contract was made.
(i) Other documents reasonably requested by the Administrator at the time you claim benefits.
Claims processing will be delayed if the submitted documents are inaccurate or illegible. PLEASE MAKE SURE all documents are totally legible.

**7. State Law Disclosures.**
**Georgia:** You must notify the Administrator within 90 days of your decision to cancel this agreement or the occurrence of an event canceling your contract.
**Nebraska** This agreement is not insurance and is not regulated by the Nebraska Department of Insurance. This agreement remains a part of the contract upon the assignment, sale, or transfer of such contract by the creditor or the creditor's designee.
**Tennessee:** You must notify the Administrator within 90 days of your decision to cancel this agreement or the occurrence of an event canceling your contract. The cost of the GAP waiver is not regulated. You have the responsibility to determine whether the cost of the GAP waiver is reasonable in relation to the protection afforded by the GAP waiver.

CMGPSET

Rev. 11/23
PFF2036B

# CarMax®

Associate: SANTI
Category: CUSTOMER DEPOSIT
Customer: OSVALDO NAVARRO
802 PINE CONE DR
DAVENPORT, FL 33897

Print Date: 4/2/2024 16:04:32

Location: CARMAX - LAKELAND 6016

Order Num: 63599
Stock Num: 25447401

CASH

Amount:     $4,000.00

Total:     $4,000.00

CarMax®





**Wally Stump**
Customer Specialist

3223 N US HWY 98
Lakeland, FL 33805
(305) 714-2932 ext.2501
FAX: (863) 880-4046
wally_stump@carmax.com